IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ARTHUR T. FLOWERS, JR., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| FIA CARD SERVICES, N.A., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:07cv971-MHT |
| | ) | (WO) |
| ARTHUR T. FLOWERS, JR., | ) | |
| | ) | |
| Appellee. | ) | |

OPINION

In an appeal to this district court, appellant FIA
Card Services, N.A. challenges two decisions of the
United States Bankruptcy Court for the Middle District of
Alabama: (1) its summary-judgment holding that appellee
Arthur T. Flowers, Jr.'s credit-card cash-advance debt to
FIA was dischargeable and (2) its award of attorney's
fees to Flowers from FIA.  This court's appellate
jurisdiction has been invoked pursuant to 28 U.S.C.

§§ 158(a) and 157(b)(2)(F).  After review, the court concludes that both decisions of the bankruptcy court should be affirmed.


## I. SUMMARY-JUDGMENT DECISION

### A. Standard of Review

In reviewing a bankruptcy decision for summary judgment entered pursuant to Fed.R.Civ.P. 56, made applicable by Fed.R.Bankr.P. 7056 and 9014, the district court functions as an appellate court, In re Sublett, 895 F.2d 1381, 1383 (11th Cir. 1990), and reviews the decision de novo.  In re Optical Techs., Inc., 246 F.3d 1332, 1334 (11th Cir. 2001).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The court must view the evidence in the light most favorable to the nonmoving

party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## B. Facts

Flowers used his FIA credit card to obtain a $ 4,000 cash advance.  He had made no payments on the account when, 99 days later, he filed for bankruptcy.  His bankruptcy schedules show that, at the time he filed for bankruptcy, his household had a monthly income of $ 2,970.14, which comprised $ 1,083.00 in Social Security benefits, $ 1,787.14 from his wife's income, and $ 100.00 from his stepdaughter.  FIA filed a adversary proceeding to determine the dischargeability of the $ 4,000 cash advance, alleging that Flowers had no intent to repay the advance.  Flowers owes FIA a total of $ 23,367.49.

The bankruptcy court entered a summary judgment holding that Flowers's $ 4,000 cash-advance debt to FIA

was dischargeable; the court also awarded attorney's fees to Flowers from FIA.

## C.  Discussion

As stated, the question presented to the bankruptcy court, and now to this district court, is whether Flowers's $ 4,000 credit-card cash-advance to FIA was dischargeable.  FIA brought its adversary proceeding under 11 U.S.C. § 523(a)(2)(A), which creates an exception, to the general rule of dischargeability, for debts obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ... financial condition."  11 U.S.C. § 523(a)(2)(A).[1]  In First National Bank of Mobile

---

1.  The subsection reads as follows:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

***

(continued...)

4

v. Roddenberry, 701 F.2d 927 (1983), the Eleventh Circuit Court of Appeals held that, under § 523(a)(2)(A)'s precursor, § 17(a)(2) of the Bankruptcy Act of 1898 (11 U.S.C. § 35(a)(2)), a credit-card debt was dischargeable unless "the bank unequivocally and unconditionally revoked the right of the cardholder to further possession and use of the card, and until the cardholder is aware of this revocation." 701 F.2d at 932. Relying on Roddenberry, the bankruptcy court here held that, because "No revocation was made at any time by FIA," Roddenberry dictates that Flowers's $ 4,000 credit-card debt be dischargeable. FIA Card Servs., N.A. v Flowers (In re

---

1.    (...continued)
      (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...."

11 U.S.C. § 523(a)(2)(A).

Flowers), Case No. 06-31560 (Chapter 7), Adv. Pro. 07-3009 (Bankr. M.D. Ala. October 29, 2007) (Sawyer, B.J.), at 7.

Admittedly, as stated, Roddenberry addressed § 523(a)(2)(A)'s precursor, § 17a(2) of the Bankruptcy Act of 1898, which read the same with the exception that it did not contain the phrase "actual fraud." The bankruptcy court stated that Roddenberry "is still binding on lower courts as section 17a of the Act is nearly identical to section 523(a)(2)(A)." Id. at 6. Therefore, according to the bankruptcy court, "Roddenberry is still good law." Id. Without question, if Roddenberry controls in this case, FIA must lose.

The bankruptcy courts have come down on both sides on the question of whether Roddenberry applies to § 523(a)(2)(A). There are those agreeing with the bankruptcy-court decision below that Roddenberry applies to § 523(a)(2)(A): e.g., FCC National Bank v. Gilmore (In re Gilmore), 221 B.R. 864, 870-876 (Bankr. S.D. Ala.

6

1998) (Cohen, B.J.).  And there are those holding that
Roddenberry does not apply: e.g., Compass Bank v. Meyer
(In re Meyer), 296 B.R. 849, 858 (Bankr. N.D. Ala. 2003)
(Mitchell, B.J.); American Express Travel Related
Services Company v. McKinnon (In re McKinnon), 192 B.R.
768, 772 (Bankr. N.D. Ala. 1996) (Caddell, B.J.).

Fortunately, this court need not decide the complex
and difficult question of whether Roddenberry is still
good law, for, even if Roddenberry does not control here,
FIA must still lose resoundingly.  First, fraud generally
requires some misrepresentation, that is, a false
statement.  FCC Nat'l Bank v. Gilmore (In re Gilmore),
221 B.R. 864, 868 (Bankr. S.D. Ala. 1998) (Cohen, B.J.)
("Under a traditional analysis of that section, to have
a debt declared non-dischargeable pursuant to that
section, a creditor must prove that 'the debtor made a
false statement with the purpose and intention of
deceiving the creditor; the creditor relied on such false
statement; the creditor's reliance on the false statement

was justifiably founded; and the creditor sustained damage as a result of the false statement.' <u>Fuller v. Johannessen (In re Johannessen)</u>, 76 F.3d 347, 350 (11th Cir.1996).") (emphasis deleted)). There is no evidence in the record that Flowers falsely stated anything to FIA when he obtained his credit card or later when he obtained the cash advance.

Some bankruptcy courts have stated that there can be an implied misrepresentation when the debtor, without making any actual statement, uses the card with no present intent to pay the debt in the future. <u>E.g.</u>, <u>McKinnon</u>, 192 B.R. at 771-772, 774-776. Here, FIA falls far short of establishing a claim under this theory. As the bankruptcy court here aptly noted,

> "Flowers filed an affidavit setting out that it was his intention to repay FIA, and that affidavit was not rebutted by any evidence."

8

<u>FIA Card Servs., N.A. v Flowers (In re  Flowers)</u>, Case No. 06-31560 (Chapter 7), Adv. Pro. 07-3009 (Bankr. M.D. Ala. October 29, 2007) (Sawyer, B.J.), at 7.

Some bankruptcy courts have also adopted a totality-of-circumstances test to determine whether § 523(a)(2)(A) fraud is established.  <u>E.g.</u>, <u>McKinnon</u>, 192 B.R. at 773. Commonly used factors in this approach in determining a debtor's intent to repay are: "(1) the length of time between the charges made and the filing of bankruptcy; (2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges are made; (6) whether the charges were above the credit limit of the account; (7) did the debtor make multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) the financial sophistication of the debtor; (11) whether there was a

sudden change in the debtor's buying habits; and (12) whether the purchases were made for luxuries or necessities." <u>Meyer</u>, 296 B.R. at 860 n.14 (citing <u>Citibank S. Dak. v. Dougherty (In re Dougherty)</u>, 84 B.R. 653 (B.A.P. 9th Cir. 1988). Here also, FIA has produced virtually nothing to meet this test.

Finally, FIA'S failure goes beyond the failure to address the above tests that courts have developed to determine whether § 523(a)(2)(A) fraud is established in the absence of <u>Roddenberry</u>'s application. As the non-moving party, FIA bears the burden of demonstrating the existence of a genuine issue of material fact and may not rest upon the mere allegations or denials in the pleadings. <u>See</u> Fed.R.Civ.P. 56(e). Yet that is precisely what FIA has done. It relies solely on Flowers's alleged inability to repay his loan, even though it has been thoroughly established that the "failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were,

10

a mere breach of contract would be tantamount to fraud." Purcell Co., Inc. v. Spriggs Enterprises, Inc., 431 So.2d 515, 519 (Ala. 1983); see also Restatement (Second) of Torts § 530 cmt. d (1977) ("The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance."). Moreover, FIA failed to attend the 11 U.S.C. § 341 creditors' meeting or conduct a Fed.R.Bankr.P. 2004 deposition of Flowers. Indeed, FIA has put forward no evidence whatsoever save for a stunningly inadequate affidavit from FIA's custodian of business records.[2]  While theoretically FIA could prove

---

2.   In full, the affidavit reads:

"I, Yasemine Kabacaoglu, pursuant to 28 U.S.C. § 1746, declare, certify, verify and state under penalty of perjury that the foregoing is true and correct:

1. I am the duly authorized custodian of the business records, or an otherwise qualified person as set forth in Federal Rule of Evidence 902(11), of FIA Card Services, N.A. and have authority to certify those records.

(continued...)

11

lack of intent to repay with, for example, evidence demonstrating "the certainty that [Flowers] would not be in funds to carry out his promise," <u>id.</u>, it has presented no such evidence as to that either.

---

   2.   (...continued)
2. I made this affidavit from my personal knowledge and I am competent to testify on these matters.

3. The record attached was made at or near the time of the occurrence of the matters set forth therein by, or from information transmitted by, a person with knowledge of these matters.

4. The record attached was kept in the ordinary course of the regularly conducted activity of FIA Card Services, N.A.

5. The record attached was made by the regularly conducted activity as a regular practice of FIA Card Services, N.A.

6. The record is a true and correct copy of the Statement of Account for the FIA Card Services, N.A. credit card or line of credit for ARTHUR T. FLOWERS, JR. for FIA Card Services, N.A. account xxxx-xxxx-xxxx-9921."

In short, Flowers asserted that he fully intended to repay his debt, and FIA has offered nothing to rebut that assertion. FIA has therefore failed to demonstrate a genuine issue of material fact sufficient to withstand summary judgment on its discharge claim based on fraud.

## II. ATTORNEY'S FEE DECISION

The fact that FIA has not put forth sufficient evidence to prove fraud is also relevant to FIA's apparently greater concern: whether, under 11 U.S.C. § 523(d), it must pay attorney's fees as awarded by the bankruptcy judge. Section 523(d) provides that, in the event of a creditor's unsuccessful attempt to have a consumer debt deemed nondischargeable under § 523(a), the debtor shall be granted an attorney's fee if "the position of the creditor was not substantially justified, except that the court shall not award such costs and fees

if special circumstances would make the award unjust."
11 U.S.C. § 523(d).[3]

The Supreme Court explored the meaning of "substantially justified" in Pierce v. Underwood, 487 U.S. 552 (1988), and defined it as "justified in substance or in the main--that is, justified to a degree that could satisfy a reasonable person." Id. at 565. While Pierce itself concerned fee awards under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A)[4],

---

3.  That subsection reads:

    "If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust."

11 U.S.C. § 523(d).

4.  That subsection reads:

(continued...)

14

the analysis is transferable to fee awards under § 523(d) because the substantial-justification standard found in § 523(d) was patterned after the EAJA's. AT & T Univ. Card Servs. Corp. v. Williams (In re Williams), 224 B.R. 523, 529 (B.A.P. 2d Cir. 1998) ("It was Congress' intent that determination of § 523(d) awards be based upon the EAJA standard.").

FIA seems to be arguing that its suit is substantially justified because it wished to challenge

---

4.  (...continued)
    "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

28 U.S.C. § 2412(d)(1)(A).

Roddenberry, the case under which Flowers's debt is
dischargeable because FIA had not revoked his credit.
While FIA certainly has a right to challenge Roddenberry,
it does not have a right to bring a claim that is
otherwise not substantially justified.  Because of FIA's
utter failure to adduce evidence demonstrating Flowers's
intent to defraud under any reasonable theory, it has not
shown its suit to be substantially justified even in the
absence of the applicability of Roddenberry,  To have
been substantially justified in bringing this suit, FIA
would have had to conduct some kind of pre-filing
investigation to determine whether there was evidence to
support fraud by Flowers.  See Bridgewater Credit Union
v. McCarthy (In re McCarthy), 243 B.R. 203, 209 (B.A.P.
1st Cir. 2000) ("The plaintiff must show that it reviewed
its legal position before filing suit to determine if it
is substantially justified.").  While there "may be
instances when, in view of all relevant circumstances,
the creditor may demonstrate substantial justification

16

notwithstanding its failure to take such steps before filing a § 523(a)(2) complaint," <u>id</u>. at 209 n.6, FIA has not made such a demonstration.

* * *


For the foregoing reasons, both decisions of the bankruptcy court will be affirmed.    An appropriate judgment will be entered.

DONE, this the 11th day of July, 2008.

        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE